NEWELL et al. v. CAPELLE et al.

No. 1056.

District Court, D. Delaware.

March 18, 1936.

John S. Oberly, of Philadelphia, Pa., and Horace G. Eastburn, of Wilmington, Del., for plaintiffs.

Aaron Finger. (of Richards, Layton & Finger), of Wilmington, Del., for defendants.

NIELDS, District Judge.

This is an equity suit to establish trusts and to obtain discovery. The bill of complaint is filed by Duncan H. Newell, executor of the will of Lillie C. Newell, and by Duncan H. Newell, Jr., only child of Lillie C. Newell, against George S. Capelle, Jr., and Wilmington Trust Company, executors of the will of George S. Capelle, and George S. Capelle, Jr., and Wilmington Trust Company, individually.

George S. Capelle, a citizen of Delaware, died September 23, 1929, at the age of 95, leaving a substantial estate. He also left to survive him one child, George S. Capelle, Jr., who was married and for a long while had maintained a separate home. Upon the death of Mrs. Capelle in 1902, a sister, Mrs. Catharine Jane Bryer, for whom he had a warm affection, and a niece, Lillie C. Bryer, daughter of his sister, made their home with him. In 1907 the sister died, and Mr. Capelle found himself alone except for his servants and personal attendant. He persuaded his niece to discontinue her course in library work at Pittsburg and to return to his home. Lillie C. Bryer remained with her uncle until her marriage to Duncan H. Newell in 1911. As Mrs. Newell she lived in various places more or less remote from Wilmington until her death in New Hampshire in 1929.

### Pleadings.

1. In the bill of complaint plaintiffs aver that Mr. Capelle "agreed to pay her [Lillie C. Bryer] $500 per month for her services as housekeeper and manager of his household"; further, that he "supplied her with funds to properly direct his household, and at monthly intervals paid her $25 which she applied toward buying her clothing. When the matter of her salary which had been agreed upon, namely $500 per month, was discussed, he repeatedly told her that he had decided to provide for her in his will instead, and that she would be paid liberally as he had promised. That on several occasions between the early part of 1907 to April, 1911, [date of niece's marriage to Duncan H. Newell] he had exhibited to her a clause in his then will under which a legacy of $25,000 was to be bequeathed to her. * * * At frequent intervals between her marriage and her moving to New Hampshire in the summer of 1919, Lillie C. Newell went to see her uncle. She was never permitted to see him alone, and finally the nurse, Susan S. Young, refused her the right to see him." Plaintiffs further aver: "As payment of the $25,000 owing to Lillie C. Newell under her said agreement, * * * George S. Capelle created for their benefit other trusts amounting in the aggregate to the sum of at least $25,000 exclusive of interest, and that there is evidence among the books, papers, old wills whether revoked or not revoked, as to testamentary matters therein, letters, bank accounts,

memoranda, and investments of the late George S. Capelle, which would establish and prove these additional trusts for their benefit."

As relief for the part of their complaint above recited plaintiffs pray for discovery only. Their prayer is: "That the said defendants be decreed to answer under oath and make discovery for inspection by the plaintiffs of all old wills and/or copies of them, books of account, notes, memoranda, letters, money, evidence of debt, deed or deeds of trust, declaration or declarations of trust for the plaintiffs or either of them, memoranda of money set aside on his books or elsewhere for the plaintiffs or either of them, all letters and memoranda concerning a trust or trusts for the plaintiffs or either of them, all stocks, bonds, real and personal property of every kind, in trust for the plaintiffs, and more particularly all old wills or copies of them, whether or not revoked as to testamentary matters, all papers or writings pertaining to a deed, deeds, declaration and/or declarations of trust upon his books, in old wills, or elsewhere, including his books and records of personal accounts during the period beginning January 1, 1907, to September 23, 1929, especially for the years 1916 to 1928 inclusive of which George S. Capelle was possessed at the time of his death, and any and all such above enumerated items which may have been in the custody of the Wilmington Trust Company or in the custody of its agents, employees and attorneys, at the time of the death of the said George S. Capelle, on September 23, 1929, and/or thereafter."

2. In their bill of complaint plaintiffs also aver: "That on or about October 13, 1916, George S. Capelle made a declaration of trust of $10,000 for Lillie C. Newell and her children, and under advise of his counsel, published, declared and communicated this said declaration of trust to Lillie C. Newell by letter, mailed in Wilmington on October 13, 1916, to her at Brookline, New Town Square P. O., Delaware County, Pennsylvania, where she resided at that time," etc. "By his letter to her dated October 13, 1916, Exhibit A, which operated both as an assignment in Equity and a declaration of trust of $10,-.000 for her and her son, he took pains to make sure that she knew of this trust, and that she advise him of her acceptance of it, he at the same time constituting him-

self their trustee." The letter of Mr. Capelle is as follows:

"9th/13 16
"Dear Lillie

"As I am approaching an old age and have but a little longer to be here, I have within the past few days been reviseing my will and creating a few trusts. And among them one of ten thousand dollars for you, and your children and knowing your strained and bitter feeling toward me I had some doubt as to whether you would wish to accept it and the only way for me to find out (by the advise of my counsel) was to write and ask you the plain question for if you declined it would complicate some other matters under my will which can only be avoided by this course.

"I trust you are all well and prosperous.
"Yours Truly
"Geo. S. Capelle."

Plaintiffs further aver that "Lillie C. Newell answered that letter and accepted the said trust on behalf of herself and her son, Duncan H. Newell, Jr., by letter mailed in Brookline, Delaware County, Pennsylvania, addressed to George S. Capelle at his address, 1304 Delaware Avenue, Wilmington, Delaware, on October 17, 1916." The letter of Lillie C. Newell is as follows:

"Brookline, Penna. October 17, 1916.
"Dear Uncle George:

"In your recent letter you say you trust we are all well and prosperous.

"I am glad to say we are and have been well. Duncan, Jr., has been, on the whole, a sturdy little fellow, and is now at a very interesting age. The trouble I have had so long with my head and throat has yielded to systematic treatments the past two years, and I feel that it is well on the way to permanent cure.

"As to our prosperity, Duncan has achieved a good measure of success in his business and we have nothing to complain. of. I have always had a maid, when one could be found. We have been very comfortable, having wanted for nothing, had all the necessities of life and having had a modest share in some of the good things of life as well.

"You mention your will. In general, I think you know just how I feel regarding money matters, for I have not changed, Uncle George. In reply to your definite question as to whether I would accept any from you in your will, I would answer

(both for my own sake and the sake of my children) an appreciative 'Yes I would.'

"I hope you have been well; in fact I have heard that you have been unusually well and I trust that you will continue so. Because one has reached the ripe age of eighty-two, it does not necessarily follow that there is not much of life and its enjoyments still to be had.

"Affectionately yours,

"Lillie."

As relief for this part of their complaint, plaintiffs pray, inter alia:

"That the said George S. Capelle, Jr., and the Wilmington Trust Company executors as aforesaid be decreed to hold the sum of $10,000, with interest at 6 per cent. per annum, from October 13, 1916, in their hands as executors under the will of George S. Capelle, deceased, as trustees for the plaintiffs.

"That it be decreed that George S. Capelle was trustee for Lillie C. Newell and Duncan H. Newell, Jr., from October 13, 1916, to the time of his death, for the sum of $10,000, with interest at 6 per cent. per annum, and that thereafter the assets of his estate were subject to this trust while in the hands of his executors and thereafter in the hands and possession of the defendant, George S. Capelle, Jr., as residuary legatee under the will of George S. Capelle, deceased."

3. In their bill of complaint, plaintiffs also aver "that another trust had been created by George S. Capelle on May 23, 1918, and the following securities delivered to Wilmington Trust Company as Trustee for himself for life and thereafter for Lillie C. Newell and her issue:

$5,000 Bethlehem Purchase Money Bonds, due 1936;

1,000 Lynchburg Traction and Light Company First Mortgage Bond, due 1931."

Plaintiffs further aver: "That this $6,000 trust was founded upon a valuable consideration, and not revocable as to the plaintiffs without the consent of Lillie C. Newell and her issue," and that the $6,000 trust agreement contained the following reservation: "It is further covenanted and agreed that the said George S. Capelle may at any time revoke, alter or modify the trusts hereby created."

Plaintiffs further aver "that on December 9, 1919, the said George S. Capelle, without the knowledge or consent of Lillie C. Newell or/and Duncan H. Newell, Jr., fully exercised and exhausted the power to revoke which he had reserved in the said $6,000 trust for their benefit, by removing therefrom the $1,000 Lynchburg Traction and Light Company First Mortgage Bond, and exercising dominion as owner thereof over the $5,000 Bethlehem Purchase Money Bonds by instructing the Wilmington Trust Company to retain them subject to the terms of the agreement, to which the Wilmington Trust Company agreed, not having had any notice of, or knowledge that the said trust of $6,000 in bonds had been founded upon a valuable consideration moving from Lillie C. Newell to the said George S. Capelle, as hereinbefore fully set forth." A copy of the purported $6,000 trust agreement and modification thereof appears in the margin.[1]

---

[1] "Whereas, Wilmington Trust Company, a corporation existing under the laws of the State of Delaware, has this day received of George S. Capelle of the City of Wilmington, New Castle County and State of Delaware the following securities:

"$5,000 Bethlehem Purchase Money Bonds due 1936,

"$1,000 Lynchburg Gas 1st Mortgage Bond due 1931.

"[Written on margin:] 1,000 Lynchburg Gas Bond taken out. G.S.C.

"Now, therefore, know all men by these Presents, that the said Wilmington Trust Company, for and in consideration of the premises, as well as for and in consideration of the sum of One Dollar to it in hand paid by the said George S. Capelle, at and before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, hereby covenants and agrees as follows, to wit:

"That it has received, now holds, and will continue to hold the said securities in trust for the following uses, intents and purposes, that is to say:

"In trust to collect and receive the income arising therefrom, and after deducting a reasonable charge (in no case to exceed four per cent. of income) for its services, to pay over the said net income, when and as received by it, unto the said George S. Capelle for and during the term of his natural life, and upon the death of the said George S. Capelle then in further trust to pay over the said net income unto Lillie Capelle Newell for and during the term of her natural life, and upon the death of the said Lillie Capelle Newell, in further trust to assign, transfer and pay over the corpus or principal of said trust

Plaintiffs further aver "that on May 27, 1922, George S. Capelle and the Wilmington Trust Company entered into a revocation agreement of the said $5,000 trust without the knowledge or consent of Lillie C. Newell and Duncan H. Newell, Jr., or of either of them, and the said $5,000 Bethlehem Purchase Money Bonds were returned by the Wilmington Trust Company to the said George S. Capelle, with the notice and knowledge on the part of the Wilmington Trust Company that George S. Capelle had no power reserved in the said $5,000 trust to revoke same." A copy of this revocation agreement appears in the margin.[2]

fund in its hands, free and discharged from any trust, as the said Lillie Capelle Newell may by her last will and testament direct; should, however, the said Lillie Capelle Newell fail to make any disposition by will of said trust estate, or should the said Lillie Capelle Newell be dead at the time of the death of the said George S. Capelle, then in further trust to assign, transfer and pay over the corpus or principal of said trust fund in its hands free and discharged from any trust unto the issue of the said Lillie Capelle Newell, their heirs and assigns forever, or, failing issue, then in further trust to assign, transfer and pay over the corpus or principal of said trust fund then in its hands, free and discharged from any trust, unto George S. Capelle, Jr., his heirs and assigns forever.

"It is further covenanted and agreed that the said Wilmington Trust Company shall not and will not, during the lifetime of the said George S. Capelle, sell or in any manner dispose of said securities without his consent in writing, but will continue to hold the same subject to the provisions of this trust. After the death of the said George S. Capelle and during the continuance of this trust said Wilmington Trust Company shall have the right to sell any of the securities comprising said trust estate, and to re-invest the proceeds arising therefrom in such securities as to it may seem for the best interest of said trust estate.

"It is further covenanted and agreed that the said George S. Capelle may at any time revoke, alter or modify the trusts hereby created, and that the said Wilmington Trust Company has caused the hand of Tilghman Johnson, its vice-president and its corporate seal to be affixed this 23rd day of May A. D. 1918.

"Wilmington Trust Company,
"Tilghman Johnson, Vice President
"[Corporate Seal.]
"Witness: W. L. Townsend
."I hereby approve the above declaration of trust.
"Geo. S. Capelle.
"Wilmington Trust Company
"Wilmington, Del. Dec. 9, 1919.
"Wilmington Trust Company, Wilmington, Del.
"Gentlemen: On May 23, 1918 I deposited with you $5,000 Bethlehem Purchase Money Bonds due 1936 and $1,000 Lynchburg Traction & Light Company First Mortgage Bond due 1931 under a certain Declaration of Trust for the benefit of myself for life and after my death for the benefit of Lillie Capelle Newell.

"Under the said Declaration of Trust I reserved unto myself the right, at any time, to revoke, alter or modify the trusts thereby created.

"I now desire to modify the said agreement to the extent of withdrawing from under the provisions thereof the $1,000 Lynchburg Traction & Light Co., First Mortgage bond due 1931, deposited thereunder.

"Will you therefore kindly deliver the Lynchburg Traction & Light Company bond to me and retain the $5,000 Bethlehem Purchase Money Bonds subject to the terms of the agreement.

"Very truly yours,
"Geo. S. Capelle

"Wilmington Trust Company
"#2                    December 9, 1919
"Wilmington Trust Company,
"Wilmington Trust Company hereby assents to the withdrawal, by George S. Capelle, of $1,000 Lynchburg Traction & Light Company, First Mortgage 5% Bond, due 1931, from under the provisions of the above mentioned Agreement, dated May 23, 1918.
"Wilmington Trust Company
"By W. H. Craig, Trust Officer
"Received of Wilmington Trust Company, Trustee under Trust Agreement dated May 23, 1918 one $1,000. First Mortgage 5% Gold Bond of the Lynchburg Traction & Light Company No. 380, due May 1, 1931, with May 1st, 1920 and all subsequently due coupons attached.
"George S. Capelle"

2 "Whereas, Wilmington Trust Company, a corporation existing under the laws of the State of Delaware, on this twenty-third day of May, nineteen hundred and eighteen, executed the Declaration of Trust, hereto annexed and made part hereof;

"And whereas, the said Declaration of Trust, among other things, provided that George S. Capelle might at any time revoke, alter or modify the trusts hereby created, and the said Wilmington Trust

As relief for this part of their complaint, plaintiffs pray: "That it be decreed that the $6,000 trust for the plaintiffs, dated May 23, 1918 was founded upon a valuable consideration and therefore could not have been revoked as to the plaintiffs by George S. Capelle without the consent of Lillie C. Newell and Duncan H. Newell, Jr., even though it contained a reservation of power to modify or revoke, and that George S. Capelle, Jr., the defendant, be decreed to hold this additional fund of $6,000, in trust for the plaintiffs as provided for in the said trust agreement, with interest from September 23, 1929."

Plaintiffs also pray: "That it be decreed that the Wilmington Trust Company is liable as such Trustee to the plaintiffs for the $5,000 fund with interest from September 23, 1929, under the Trust Agreement by and between it as Trustee and George S. Capelle, dated December 9, 1919, and that it pay over to the plaintiffs the said sum of $5,000 with interest from September 23, 1929, or cause the same to be paid to them by George S. Capelle, Jr., residuary legatee under the will of George S. Capelle, deceased."

The issues framed by the answer to the averments of the bill of complaint above recited are considered in the following findings of fact and conclusions of law:

## Findings.

Plaintiffs in their bill make no claim to $25,000, and there is no prayer in the bill for a decree for the payment thereof. The bill is not framed so as to admit of any recovery with respect to this alleged claim of $25,000. The only prayers are for discovery of documents to prove the existence of a trust in favor of Lillie C. Newell for this amount. The testimony of George S. Capelle, Jr., and of the representatives of the Wilmington Trust Company discloses that they had no trust agreement creating any such trust and have no knowledge of the existence of any such trust agreement. The sole testimony in support of the claim of $25,000, based on Mr. Capelle's alleged breach of contract to make a will in favor of Lillie C. Newell, is the testimony of Mrs. Nellie Caroline Newell. She told of a conversation with Mr. Capelle in January, 1911, more than twenty-four years ago. She testified: "He said, 'You know I am very fond of Lillie.' I said 'I am sure you are.' He said, 'Lillie has always been more to me than a daughter could possibly be, and I have had many talks with Lillie during the early part of the time she was here, and we came, I came to an agreement asking Lillie if she would remain with me as long as I live, or as long as she remained single, and she said yes, she would; and in lieu of that agreement, I promised I would leave her $25,000, in my Will.'" She further testified that she never mentioned this conversation to any one except her husband until about a year ago, when she told her son. Thus a period of twenty-three years elapsed from the time of the conversation until she mentioned the matter to her son and about five years had elapsed from the date of Mr. Capelle's death until she first mentioned it to her son.

Moreover this claim for $25,000 is a purely legal demand. It is a claim for breach of contract to make a will. Any claim for such a breach must be asserted by action at law, and cannot be made the basis of a bill in equity. There is no connection between this demand and the claims with respect to $10,000 and $6,000. Therefore there is no basis for contending that the court should assume jurisdiction in this equity suit with respect to a

Company would concur in and act in conformity with such revocation, alteration or modification of the said trusts;

"And whereas, it is the desire of the said George S. Capelle to revoke the said trusts and the said Wilmington Trust Company is willing to concur and act in conformity with such revocation;

"Now, therefore, Know All Men by These Presents, that I, the said George S. Capelle, by virtue of and in conformity with the provisions of the said trust agreement, do hereby revoke the said trusts, and direct the said Wilmington Trust Company to transfer and deliver unto me the corpus or principal of the trust estate and all accrued interest thereon, said revocation to take effect and be operative as of the day of the date hereof.

"In Witness Whereof, I have hereunto set my hand and seal this 27 day of May, A. D. nineteen hundred and twenty-two.
      "George S. Capelle [Seal.]
"Signed, Sealed and Delivered in the presence of
   "Henry Bush
"Wilmington Trust Company hereby concurs in and agrees to act in conformity with the revocation aforesaid.
      "Wilmington Trust Company
      "By Edgar M. Hoopes, Jr."

legal demand for $25,000 because it is asserted in the same suit with the other claims.

Neither an agreement for payment by George S. Capelle to Lillie C. Bryer of $500 per month for managing Mr. Capelle's household nor an agreement by Mr. Capelle to leave a legacy of $25,000 in his will in favor of Lillie C. Bryer, in lieu of payment of $500 per month, has been satisfactorily or sufficiently proved. The record justifies no finding' that George S. Capelle ever agreed to pay Lillie Bryer $500 per month for her services as manager of Mr. Capelle's household or any agreement on the part of George S. Capelle to leave Lillie C. Bryer $25,000 by will. The discovery with respect to a $25,000 trust made by the defendants disclosed no such trust.

2. The letter of George S. Capelle, dated September 13, 1916, to Lillie C. Newell, created no trust. It merely expressed an intention to create a trust in the sum of $10,000. Upon the face of the letter, Mr. Capelle was not declaring a trust, but was discussing the matter of making some provision for his niece in his will. The letter contemplated some further act to carry out the intention expressed therein. The contemplated trust was to be created by another document; namely, his will. The contemplated gift of $10,000 referred to in the letter was testamentary in character and unenforceable because not complying with the statute of wills. No legal or binding obligation upon George S. Capelle or upon his estate was created by this letter. The letter made no definite promise to make a gift, and there is no evidence to show that the $10,000, or any part thereof, was set aside for Mrs. Newell or that Mr. Capelle had parted with dominion over the amount of the contemplated gift or that the statement in the letter was anything more than a voluntary statement without consideration. It is perfectly well settled that a declaration of intention to create a trust is unenforceable and the person making such a declaration is at liberty to change his mind without legal liability.

3. Plaintiffs make two contentions with respect to the $6,000 or $5,000 trust, viz.: (a) That this trust was based upon a valuable consideration and therefore the settlor had no power to revoke it. Upon this theory it is claimed that a trust for $6,000 with interest in favor of the plaintiffs should be declared. (b) That settlor exhausted his power of revocation when he withdrew the $1,000 bond, thereby leaving an irrevocable trust for $5,000, with interest, in favor of the plaintiff.

It is contended that Mr. Capelle exhausted his power of revocation by his letter of December 9, 1919, to the Wilmington Trust Company. By the terms of the trust it was expressly provided "that the said George S. Capelle may at any time revoke, alter or modify the trust hereby created." By his letter of December 9, 1919, after referring to this reservation, Mr. Capelle said: "I now desire to modify the said agreement to the extent of withdrawing from under the provisions thereof the $1,000 Lynchburg Traction & Light Co., First Mortgage bond due 1931, deposited thereunder." It will be observed that Mr. Capelle did not exercise any reserved power to revoke, but merely modified the trust to the extent above stated. The letter concludes: "Will you therefore kindly deliver the Lynchburg Traction & Light Company bond to me and retain the $5,000 Bethlehem Purchase Money Bonds subject to the terms of the agreement." By the express terms of the letter of December 9, 1919, the remaining securities were held in trust subject to the reserved power to revoke. May 27, 1922, Mr. Capelle, in the exercise of his reserved power, completely revoked the trust. The letter of George S. Capelle to Wilmington Trust Company, dated December 9, 1919, merely modified the trust agreement of May 23, 1918, between George S. Capelle and the Wilmington Trust Company, and was not intended to and did not operate upon any part of the trust created by that agreement except upon the $1,000 bond referred to in the letter, leaving the remainder of the trust unrevoked and subject to the terms thereof. The power to revoke, alter, or modify the trust was amply reserved to Mr. Capelle, and that power was exercised by the letters of Mr. Capelle to the Wilmington Trust Company, dated December 9, 1919, and May 27, 1922. By the exercise of this power, the trust was entirely revoked, leaving no interest in the plaintiffs. Assuming the letter of December 9, 1919, was an act in the exercise of the power to revoke the trust agreement, it was not a complete exercise of that power and did not operate upon the whole trust estate. It was effective only with respect

to the portion of the trust estate with which the letter dealt. Mr. Capelle continued to have the power of revocation reserved in the trust agreement with respect to all of the trust estate except that upon which the letter of December 9, 1919, operated. Mr. Capelle was not required to exercise his full power of revocation at one time, but could validly exercise the power with respect to part of the trust estate at one time and with respect to other parts of the trust estate at other times. The trust agreement was a voluntary trust without consideration, and the power of revocation therein expressly reserved could be exercised by Mr. Capelle against the beneficiaries named in the trust agreement.

The bill of complaint must be dismissed.